Broadnax v. Associated Cab & Transp., Inc., 2016 NCBC 29.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 8430

JESSE BROADNAX, EDWARD C. BUTLER, )
JOHN CARTER, LUCY CHAVIS, HENSDALE )
CURTIS, DAVID L. EDWARDS, DONALD )
GATLING, RITA B. HARRIS, ROBERT )
HOWARD, WILLA MAE JACKSON a/k/a )
WILLA JACKSON, MARIO JONES, )
PATRICIA JOYNER, JOE MCLEAN, )
BENNIE OVERTON, II, IDA POWELL, and )
JESSIE RAY, )
          Plaintiffs, )
           )
        v. )
           )
ASSOCIATED CAB & TRANSPORTATION, )
INC. a/k/a ASSOCIATED CAB & )
TRANSPORTATION SERVICE, INC. f/k/a )
ASSOCIATED CAB COMPANY, WILLIAM )
THOMPSON, and NATALIE LUNSFORD, )
          Defendants. )

OPINION AND ORDER

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants Associated Cab & Transportation, Inc. a/k/a Associated Cab & Transportation Service, Inc. f/k/a Associated Cab Company ("Associated Cab"), William Thompson, and Natalie Lunsford's Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Motion to Dismiss"). On February 23, 2016, the Court held a hearing on the Motion to Dismiss.

THE COURT, having considered the Motion to Dismiss, briefs in support of and opposition to the Motion to Dismiss, and argument of counsel, concludes that the Motion to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons below.

*Smith, Debnam, Narron, Drake, Saintsing & Myers, LLP by Byron L. Saintsing, Esq. and Samuel D. Fleder, Esq. for Plaintiffs.*

*Tuggle Duggins, PA by Denis E. Jacobson, Esq., Brandy L. Mills, Esq., and Richard W. Andrews, Esq. for Defendants.*

McGuire, Judge.

I.     FACTUAL AND PROCEDURAL BACKGROUND.

1.     Defendant Associated Cab & Transportation, Inc. a/k/a Associated Cab & Transportation Service, Inc. f/k/a Associated Cab Company ("Associated Cab") was formed in 2002 by several parties, including Plaintiffs, to provide transportation services to students in the Wake County Public School System ("WCPSS"). Defendants William Thompson ("Thompson") and Natalie Lunsford ("Lunsford") are principals of Associated Cab.

2.     Associated Cab provided transportation services to WCPSS students under a series of annual contracts between Associated Cab and WCPSS.  Associated Cab, in turn, subcontracted with Plaintiffs to transport the students using Plaintiffs' own vehicles.[1] Plaintiffs ceased subcontracting with Associated Cab in 2014.[2]  The Plaintiffs subcontracted with Associated Cab for periods ranging from 4 to 10 years.[3]

3.     Plaintiffs allege that Associated Cab made unauthorized deductions from amounts owed to Plaintiffs as compensation under the subcontracts. Plaintiffs allege that the unauthorized deductions were made over the entire course of their respective engagements with Associated Cab.  Associated Cab made unauthorized deductions from Plaintiffs' compensation for:

    a. Vehicle liability insurance despite the fact that Associated Cab required Plaintiffs to maintain and pay for their own vehicle liability insurance on their vehicles; [4]

---

[1] Compl. ¶ 29; Plaintiffs have attached some of these subcontracts as exhibits to their Complaint.
[2] *Id.* at ¶ 34.
[3] *Id.* at ¶ 35.
[4] *Id.* at ¶ 32-35.

b. "Office fees";[5]

c. "[C]ellular telephone equipment that was never used by Plaintiff[s]";[6] and,

d. Repayment of overpayments allegedly made by WCPSS to Associated Cab.[7]

4.     Plaintiffs allege that Associated Cab "falsely represented that it had authority and justification to make the . . . deductions from Plaintiff[s'] paychecks" and represented that "it would not make unauthorized deductions from Plaintiff[s'] paychecks."[8] The false representations were "reasonably calculated . . . to deceive Plaintiff[s]" and Plaintiffs relied upon the representations in agreeing to provide services to Associated Cab.[9]

5.     Plaintiffs also allege that "Associated Cab repeatedly failed to render paychecks to Plaintiff[s] in a timely manner"[10] and "regularly and intentionally issued incorrect Forms 1099 which overstated the amounts paid to Plaintiff Subcontractors."[11] The Complaint does not allege that the failure to time provide paychecks or failure to issue Forms 1099 caused any injury to Plaintiffs.

6.     With regard to Plaintiff Bennie Overton, II ("Overton"), Plaintiffs allege that Associated Cab fraudulently required him to pay a $2,500.00 deductible arising from an insurance claim, despite Associated Cab's "repeated deduction from [Overton's] paychecks of . . . monthly payments for purported vehicle liability insurance."[12]

7.     Finally, Plaintiffs allege that Plaintiffs Willa Mae Jackson ("Jackson") and Jessie Ray ("Ray") made capital contributions to the formation of Associated Cab, that Associated Cab and Thompson "falsely represented to [Jackson and Ray] that they would

---

[5] *Id.* at ¶¶ 36-37.
[6] Compl. ¶¶ 38-39.
[7] *Id.* at ¶¶ 40-43.
[8] *Id.* at ¶¶ 63-64.
[9] *Id.* at ¶¶ 66.
[10] *Id.* at ¶ 44.
[11] *Id.* at ¶ 45.
[12] Compl. ¶¶ 46 -50.

receive stock certificates in Defendant Associated Cab", but that Thompson and Associated Cab "failed to account for the initial capital contributions of [Jackson and Ray] . . . , and failed to issue any stock certificates" in Associated Cab to Jackson and Ray.[13] The representations were intended to deceive Jackson and Ray, and they reasonably relied on the representations in making the capital contributions.[14]

8. On June 17, 2015, Plaintiffs filed their Complaint. The Complaint alleges the following claims for relief ("Counts"): Breach of Contract by Defendant Associated Cab as to All Plaintiff[s] (Count One); Fraud by Defendant Associated Cab as to all Plaintiff[s] (Count Two); Unfair and Deceptive Trade Practices by Defendant Associated Cab as to all Plaintiff[s] (Count Three); Fraud by Defendants Associated Cab and Thompson as to Plaintiffs [Jackson and Ray] (Count Four); Accounting (Count Five); Piercing the Corporate Veil of Associated Cab and Liability for Breach of Contract and Fraud of Defendants Thompson and Lunsford as to Plaintiff Subcontractors (Count Six); Piercing the Corporate Veil of Associated Cab and Liability for Fraud of Defendants Thompson and Lunsford as to Plaintiffs [Jackson and Ray] (Count Seven); and Punitive Damages against all Defendants (Count Eight).

9. On August 18, 2015, Defendants filed their Answer in which they asserted a motion to dismiss pursuant to Rule 12(b)(6). On December 8, 2015, Defendants filed the Motion to Dismiss, along with a brief in support of that motion as required by the General Rules of Practice and Procedure for the North Carolina Business Court.

10. The Motion to Dismiss has been fully briefed and argued, and is ripe for determination.

---

[13] *Id.* at ¶¶ 51-53.
[14] *Id.* at ¶¶ 79-81.

## II.  DISCUSSION AND ANALYSIS.

11. In the Motion to Dismiss, Defendants move, pursuant to Rule 12(b)(6), "to dismiss the Complaint . . . , or parts thereof, because it fails to state a claim for which relief can be granted."[15]  Read in conjunction with their brief in support of the Motion to Dismiss, it is clear that Defendants do not seek dismissal of the entire Complaint.  Rather, it appears that Defendants seek dismissal of (a) the fraud claim based on Associated Cab's deductions from their compensation and promises of pay increases ("Claim One"), (b) the unfair and deceptive practices claim based on Associated Cab's deductions from their compensation ("Claim Three"), and (c) claims of breach of contract, fraud, and unfair and deceptive practices that occurred outside of the statutes of limitations applicable to those actions.  In their brief, Defendants do not make separate express arguments for dismissal of Claims One, Four, Five, Six, Seven or Eight.  Nevertheless, in response to the Motion to Dismiss Plaintiffs specifically argued that Jackson and Ray had sufficiently a stated claim for fraud based on the failure to receive stock certificates (Claim Four)[16], and Defendants address that claim in their reply brief.  Accordingly, the Court will consider dismissal of only those claims argued by Defendants.

12. As is well established, the Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id.* The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon

---

[15] Mot. Dismiss p. 1.
[16] Pl. Br. Opp. Mot. Dismiss p. 6.

which relief can be granted on any theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984) (citations omitted), *rev'd on other grounds*, 313 N.C. 565 (1985). A motion to dismiss should be granted only if "it appears certain that [the plaintiff] can prove no set of facts which would entitle [it] to relief under some legal theory." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 225 (2010).

  a. *Plaintiffs' Fraud and Unfair and Deceptive Trade Practice Claims Against Associated Cab (Counts Two and Three).*

13. In Count Two of the Complaint, Plaintiffs allege that Associated Cab made "false representations" to Plaintiffs that amounted to fraud. Plaintiffs allege that Associated Cab: (a) each year upon renewal of the subcontracts with Plaintiffs "made simultaneous oral communications" promising to "pass along to Plaintiff[s] increases in the rate of pay [ ] received by [ ] Associated Cab from WCPSS;"[17] (b) deducted from Plaintiffs pay for vehicle liability insurance while requiring Plaintiffs to maintain their own insurance; (c) "falsely represented that it had authority and justification to make the … deductions from Plaintiff[s] paychecks;" and (d) told Plaintiffs it would not make unauthorized deductions from Plaintiffs paychecks.[18] In Count Three, Plaintiffs allege that the same conduct also constituted "unfair and deceptive trade practices" in violation of N.C. Gen. Stat. § 75.1.1.[19]

14. Defendants argue that Plaintiffs' claims for fraud and unfair and deceptive trade practices against Associated Cab are nothing more than an attempt to manufacture tort claims out of allegations that Defendants breached the subcontracts. Defendants argue these claims fail as a matter of law because Plaintiffs do not allege Defendants owed them a

---

[17] Compl. ¶ 64(a).
[18] *Id*. at ¶¶ 63-64.
[19] *Id*. at ¶¶ 70-76; the North Carolina General Statutes are hereinafter referenced as "G.S." followed by a section number.

duty other than the duties imposed by the subcontracts, nor do Plaintiffs allege aggravating circumstances surrounding the alleged breaches of contract.

15. North Carolina appellate courts have long recognized that, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81 (1978). Moreover, "[t]he mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998). This rule applies even if the failure to carry out the promised performance is negligent or intentional. *See Spillman v. American Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65 (1992). Instead, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Gregory Woods Prods. v. Advanced Sawmill Mach. Equip., Inc.*, 2007 U.S. Dist. LEXIS 46245, at *25 (W.D.N.C. 2007) (internal citations omitted). Ultimately, to state a valid fraud claim arising in connection with a contractual relationship between the parties, such a claim must be distinct from the primary breach of contract claim. *Broussard*, 155 F.3d at 346.

16. Similarly, an unfair and deceptive trade practices claim must be "distinct from actions for breach a contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under" G.S. § 75-1.1. *Southeastern Shelter Corp. v. Btu, Inc.*, 154 N.C. App. 321, 330 (2002). "To recover for unfair and deceptive trade practices, a party must show substantial aggravating circumstances attending the breach of contract." *Id.* (internal citations omitted). Ultimately, where the "heart of [a plaintiff's] allegation [concerns] the performance of the contract," the tort claim will be barred. *Mecklenburg County v. Nortel*, 2008 U.S. Dist. LEXIS 110381, at *12-13 (W.D.N.C. 2008). *See also Broussard*, 155 F.3d at 346 (concluding that the district court erred in

allowing plaintiffs to proceed on their claim for unfair and deceptive trade practices claim when "[t]he crux of [the] matter is and always has been a contract dispute").

17.     Here, Plaintiffs' fraud and unfair and deceptive trade practices claims against Associated Cab arise directly from the alleged nonperformance of Defendants' contractual obligations and promises, and these claims are coterminous with their claims for breach of contract. Significantly, Plaintiffs allege that the same representations on which they rely for the fraud and unfair and deceptive acts claims were part of, and incorporated into, their contract claims. Plaintiffs allege in their breach of contract claim (Count One) that:

> In addition to the written terms of each subcontract, [ ] Associated Cab made *repeated representations and promises* to Plaintiff[s] both at the outset and throughout the course of Plaintiff[s' engagement with [ ] Associated Cab, *all of which formed part of and were incorporated into each of Plaintiff[s] contractual relationships with Associated Cab.*[20]

18.     Plaintiffs allege that the representations that were part of their contracts with Associated Cab "included, but were not limited to" the promise to pass along pay rate increases from WCPSS and the promise not to make unauthorized deductions from their paychecks.[21] Plaintiffs do not allege that Associated Cab owed them any duties to pass along rate increases or to not make deductions other than the alleged duties arising from Associated Cabs' promises made in, or in conjunction with, the subcontracts. Even if the Court interpreted Plaintiffs' allegations as claiming that Associated Cab made the promises and representations with no intention of fulfilling them, those allegations are insufficient to state an independent tort claim. *See Norman v. Tradewinds Airlines, Inc.*, 286 F.Supp. 2d 575, 594 (M.D.N.C. 2003) ("Where a plaintiff does nothing more than assert that a promisor never intended to honor its obligations under an agreement, dismissal [of a claim for fraud] as a matter of law is appropriate."). Finally, the allegation that Associated Cab made the

---

[20] *Id.* at ¶ 59 (emphasis added).
[21] *Id.*

false representations for the purpose of inducing Plaintiffs to enter into or continue their contractual relationships "does not change the fact that these statements were directly related to [defendant's] performance of essential portions of the contract. Such negligent or intentional actions, relating to contract performance, do not transform contract claims into independent torts or trade practice claims." *Nortel*, 2008 U.S. Dist. LEXIS 110381, at *13.

19. Although Plaintiffs correctly note that some courts have concluded that intentional misrepresentations can constitute substantial aggravating circumstances supporting a claim for violation of G.S. § 75-1.1, the cases cited by Plaintiffs are distinguishable from the case at bar. In *Baldine v. Furniture Comfort Corporation*, the only case cited by Plaintiffs in which a court allowed a claim under G.S. § 75-1.1 to proceed,[22] the defendant misrepresented not only that it would honor the terms of an agreement, but also the very existence of the agreement. 956 F.Supp. 580, 583 (M.D.N.C. 1996). This misrepresentation then induced the plaintiff into beginning work without the agreement in place, enabling defendant to obtain plaintiff's work for far less than the negotiated contract rate. *Id.* at 588. Here, Plaintiffs do not allege anything similar to this degree of misrepresentation. At best, Plaintiffs only allege that Defendants entered into agreements with Plaintiffs that they never intended to fulfill or otherwise intentionally breached. These allegations fall squarely within both Plaintiffs' contract allegations[23] and the category of allegations that North Carolina courts have held insufficient to establish a violation of G.S. § 75-1.1. *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 298 (2012) (recognizing that "a

---

[22] *See* Pls.' Br. Opp. Defs.' Mot. Dismiss p. 8.

[23] Even the characterization of Plaintiffs' breach of contract claim in their brief in opposition to the Motion to Dismiss supports such a conclusion. *See id.* at p. 3 ("Associated Cab breached its contracts with Plaintiffs by regularly and deceptively making improper deductions from payments due to Plaintiffs for services rendered, and by intentionally misleading Plaintiffs to believe that such deductions were permissible.").

mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [G.S. § 75-1.1]") (internal quotations omitted).

20. The Court concludes that Plaintiffs' claims for fraud and unfair and deceptive trade practices are, at their core, restatements of, or otherwise subsumed in, their claim for breach of contract. Plaintiffs have not pleaded the existence of any extra-contractual duty or substantial aggravating factors that would allow Plaintiffs to pursue these claims. Accordingly, the Motion to Dismiss should be GRANTED as to Counts Two and Three.[24]

b. *Claim for Fraud by Jackson and Ray Against Associated Cab and Thompson.*

21. In Claim Four, Plaintiffs allege that Associated Cab and Thompson committed fraud by falsely promising Jackson and Ray that they would receive stock certificates in exchange for capital contributions they made "to the formation of [ ] Associated Cab."[25] Plaintiff allege that Jackson and Ray each contributed $1,205.00 "in consideration of the issuance to them of stock certificates of [ ] Associated Cab," but that the stock certificates were not issued to Jackson and Ray.[26] Although the Complaint alleges that Associated Cab and Thompson "failed to account for" Jackson's and Ray's capital contributions, it does not allege that Associate Cab or Thompson are denying or otherwise repudiating that Jackson and Ray own an equity interest in Associated Cab; Plaintiffs only allege that no certificates have been issued memorializing that interest. [27]

---

[24] To the extent Plaintiffs believe they have brought a claim for fraud based upon the allegations regarding Overton contained in paragraphs 46-50 of the Complaint, the allegations under Count Two do not expressly include that claim. In addition, Defendants made no separate argument for the dismissal of a claim regarding Overton. Accordingly, the Court does not decide in this order whether the Complaint sufficiently alleges a claim for fraud regarding Overton.

[25] Compl. ¶ 78.

[26] *Id.* at ¶¶ 52-53.

[27] Under North Carolina law, a corporation is not required to issue stock certificates representing shares. G.S. § 55-6-25(a).

22.     As an initial matter, the Court is skeptical that such an allegation could support a claim for fraud. Jackson and Ray allege that they were promised that they would be issued stock certificates in exchange for capital contributions, that they made contributions, and that no stock certificates were issued pursuant to the agreement. As such, Claim Four is a claim for breach of a contractual, if unwritten, agreement. Just as above, allegations that Associated Cab and Thompson failed to perform a contractual agreement between the parties are not sufficiently independent of that contractual relationship to give rise to a tort claim. The Court concludes that Claim Four is subject to dismissal on this basis.

23.     More clearly, however, Claim Four is barred by the statute of limitations. Plaintiffs allege that Jackson and Ray contributed capital "to the formation of [ ] Associated Cab."[28] Associated Cab was formed "in or about 2002."[29] Accordingly, any alleged fraud, and the discovery of the fraud, would have occurred in or about 2002, far outside the three year statute of limitations for fraud. *See* G.S. § 1-52 (9). Because the Complaint itself pleads facts that show Claim Four is barred by the applicable statute of limitations, and fails to allege anything more than a breach of a contractual promise, the Motion to Dismiss should be GRANTED as to Claim Four.

c. *Application of Statute of Limitations to Claims for Breach of Contract (Count One).*

24.     Defendants contend that Plaintiffs' claims for breach of contract should be dismissed to the extent it seeks relief for breaches occurring outside of the applicable statute of limitations. Plaintiffs allege that Associated Cab breached their subcontracts by making unauthorized deductions from their respective paychecks for period of up to 10 years ending in July, 2014. Plaintiffs filed this lawsuit on June 17, 2015. Accordingly, Defendants seek dismissal of claims for breach of contract accruing before June 17, 2012.

---

[28] Compl. ¶¶ 51, 78, 79, 80, and 81.
[29] *Id.* at ¶ 25.

25.     "The statute of limitations may provide the basis for dismissal on a motion pursuant to . . . Rule 12(b)(6) if the face of the complaint establishes that [a] plaintiff's claim is barred." *Liptrap*, 128 N.C. App. at 355. Even in the context of a motion pursuant to Rule 12(b)(6), "[o]nce the defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff." *Birtha*, 220 N.C. App. at 292 (internal citations omitted).

26.     The statute of limitations in this State for a breach of contract claim is three years, which "begins to run on the date the promise is broken." *Liptrap v. City of High Point*, 128 N.C. App. 353, 355 (1998). Where a contract imposes on a party an obligation to make payments in periodic payments in installments, "the statute of limitations runs against each installment independently as it becomes due." *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 357 (1990); *see also United States Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 426 (N.C. Ct. App. 1988) ("[T]he statute of limitations runs against each installment individually from the time it becomes due."); *GR&S Atl. Beach, LLC v. Hull*, 2012 NCBC LEXIS 54 **27 (N.C. Super. Ct. 2012) ("The general rule may be different for contracts which envision a continuum of payments or obligations . . . . There, each failure to pay is considered a separate breach and a new limitations period may commence each time a payment is not made."). "This principle has been applied to annual tax obligations arising out of a contract, lease payments, a computer system service contract, and improper overcharges for workers' compensation insurance." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 2015 NCBC LEXIS 64 **9 (N.C. Super. Ct. 2015).

27.     In *Jacobs v. Central Transport, Inc.*, 891 F.Supp. 1120 (E.D.N.C. 1995), the United States District Court for the Eastern District of North Carolina applied this principal to a highly analogous case and limited the plaintiff's recovery to only those deductions made within the statute of limitations. In *Jacobs*, the defendant contracted with the plaintiffs to

provide certain leased services. The contract required the plaintiffs to purchase workers' compensation insurance through the defendant's policy instead of permitting the plaintiffs to obtain their own insurance which was much less expensive. *Jacobs*, 891 F.Supp. at 1122. The court determined that the defendant improperly charged the plaintiffs for the cost of the workers' compensation insurance, apparently by deducting from the plaintiffs' pay, and awarded them damages of the difference in cost between their payments to the defendant for coverage and what it would have cost the plaintiffs to purchase their own individual policies. *Id.* at 1122-24. With regard to the time period for which the plaintiffs could recover damages, the court held that each deduction for insurance made by the defendant triggered a new cause of action, and that the plaintiffs were limited to recovering damages for deductions made within the three year North Carolina statute of limitations applicable to actions for breach of contract. *Id.* at 1124. In reaching this conclusion, the district court rejected the plaintiffs' argument that their cause of action did not accrue until the defendant had completed taking all of the improper deductions. *Id.*

28.     Plaintiffs argue that the Court should deny dismissal on statute of limitations grounds because at least some of the subcontracts, including two of the contracts attached to the Complaint,[30] were executed under seal. The statute of limitations for contracts or other instruments executed under seal is ten years from the date of breach. G.S. § 1-47(2). Plaintiffs contend that since two contracts attached to the Complaint were executed under seal, other subcontracts "may have also been executed under seal."[31] In addition, the parties have informed the Court that discovery in this matter has revealed some additional subcontracts that were executed by Plaintiffs under seal.[32] Those contracts, however, were

---

[30] Compl. Exs. B-3, B-4.
[31] Pls.' Br. Opp. Defs.' Mot. Dismiss p. 11.
[32] *See* Defs. Reply Br. pp. 9-10.

not attached to or otherwise incorporated into the Complaint and cannot be considered in determining the Motion to Dismiss without converting the pending motion to one for summary judgment.[33] Nevertheless, to the extent at least some of Plaintiffs' subcontracts may have been executed under seal, the Court will not dismiss those claims.

29. In this case, Plaintiffs allege that Associated Cab made the improper deductions from the periodic compensation payments made to Plaintiffs over the course of a number of years. The Court concludes that Plaintiffs causes of action for the improper deductions accrued with, and the statute of limitations ran from, each improper deduction alleged to have been made. The Complaint on its face establishes that a significant portions of Plaintiffs' breach of contract claim are barred by the three year statute of limitations. Accordingly, to the extent Plaintiff Subcontractors seek to recover for allegedly improper deductions that were made before June 17, 2012, under a subcontract that was not executed under seal, the Motion to Dismiss should be GRANTED, and those claims should be dismissed. To the extent that Plaintiffs entered into subcontracts that were executed under seal, this order does not impact breach of contract claims under those subcontracts, and such claims are not dismissed.

THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part, as follows:

30. As to Claims Two, Three, and Four, the Motion to Dismiss is GRANTED, and those claims are DISMISSED, with prejudice.

31. As to Claim One, the Motion to Dismiss is GRANTED, in part, and DENIED, in part. To the extent Plaintiffs seek to recover for any alleged breach of a subcontract not executed under seal occurring prior to June 17, 2012, Claim One is DISMISSED. To the

---

[33] *See* N.C. Gen. Stat. § 1A-1, Rule 12.

extent Plaintiffs seek to recover for breach of any subcontract executed under seal, or for a breach of a subcontract occurring on or after June 17, 2012, the Motion to Dismiss is DENIED as to Claim One.

32. Except as expressly granted above, the Motion to Dismiss is DENIED.

This the 12th day of April, 2016.

 /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
   for Complex Business Cases